14-5741, 14-5742, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, role in the offense as a manager or supervisor under section 3B1.B of the 1995 Sentencing Guidelines. That's how I would… Your first point is the point on malice aforethought that's in the federal death penalty statute which was the cross reference. Is that what you're referring to? Well, the cross reference in section 2D1.1 as it existed in 1995, the cross reference to the first degree murder statute, section 11.11. And the first degree murder statute requires not only malice aforethought but premeditation and deliberation. In our view, this court's published opinion in United States v. Milton controls the first issue. And the Milton court, Judge Keith writing for the unanimous panel, referred to the relevant conduct provision of section 1B1.3, but squarely held that district courts must consider whether a defendant's conduct satisfied the guidelines definition of the cross reference defense. That offense in this case being the murder as defined by section 11.11. Now, Milton was a second degree murder case, not a first degree murder case, so there was no premeditation requirement. But the district court had failed to make a finding as to actual malice. Well, this court took care of that because there was record evidence of the defendant's actual malice in that he personally had fired two shots into the victim's car and may or may not have fired the fatal shot, but at least in terms of establishing malice, the fact that he had fired... Isn't Milton distinguishable, though, that in Milton neither the defendant nor the defendant accomplice or cohort person, the other person, had been shown to have the proper specific intent, whereas here Shakir would arguably have the proper specific intent? I think there's no doubt that Mr. Shakir had the requisite intent. So why under 1B1.3 doesn't that transfer over to your client? Because as this court decided, I would refer to this court's decision in the United States to be Campbell, which was an interpretation of section 1B1.3, and the Campbell court said that in applying, and I'm quoting here, in applying a relevant conduct provision to hold a defendant accountable for the acts of others, the court must find that the acts in question quote, were within the scope of the defendant's own agreement with the other or others. And your honor, there's absolutely no evidence in the record that Ms. Anderson had agreed with Mr. Shakir to murder Sharon Durant. Would it be required that she agree to murder, or would it be required that she agree to murder, in whatever Shakir was doing, and that Shakir intended to murder, and that it was foreseeable to your client that Shakir intended to murder? Not that she agreed to murder, but that it was foreseeable, and that Shakir had the intent? This was in December 1995, Mr. Shakir, at least as far as, again based on the record, Ms. Anderson had no knowledge of Mr. Shakir having committed any other murders at that point. He had, in fact, he had committed. I thought, so there was this Harris murder. The Solomon Harris. That was, and that was what the victim of this murder, Durant, was worried about being part of. Correct. And your client didn't know about the Harris murder, or was it that Shakir hadn't done the Harris murder? There is no evidence in the record that Ms. Anderson knew anything about the Harris murder. What the record referred to... I thought she knew that Durant was worried about being tagged with the Cadillac involved in the Harris murder. She was, according to the trial testimony, she met with Ms. Durant at this bar, and Ms. Anderson testified at the Shakir trial, it's hard to read, at page ID numbers 9331 through 93389, I'm sorry, 9349, in 10 pages, Ms. Anderson did not relate that Ms. Durant told her anything about the Solomon Harris murder. According to Ms. Anderson's testimony, Ms. Durant was concerned about this Cadillac, but there was nothing said about the Solomon Harris murder. And I would submit that under the Campbell decision, the government would have had to prove, at least by preponderance, that Ms. Anderson did agree to assist Shakir in the murder of Ms. Durant. I want to just get you to clarify, in this case, is it your contention that the lower court considered all of the evidence and simply erroneously applied the wrong cross-reference, or that the court applied the wrong cross-reference and did not go through the requisite record analysis to support whatever decision it came to? The latter. Your insistence is that foreseeability, or the question of foreseeability, is not the basis to murder. That's your submission. Your Honor, I believe that's what this court said in Milton, which is the only published decision addressing the murder cross-reference. But I also believe, setting aside the specific cross-reference to murder, and I hope I'm not repeating myself, I believe this court said in Campbell that to hold a defendant liable for the conduct of another, the government has to prove that there was an actual agreement to commit the act in question. The Campbell court distinguished between liability under a conspiracy theory and liability under a relevant conduct theory, which is much narrower. Now the court found, though, that Ms. Anderson clearly voluntarily was a part of, an annoying part of the conspiracy, and at page ID 78 and 79, didn't the court find that Anderson had actual knowledge that the murders would occur and took substantial steps to help effectuate that? I believe that language does appear there, Your Honor, but there's no analysis of the evidence. I would contend that it's not an actual evidentiary finding. The court should have articulated whatever those steps were for the record that the court based that determination on to satisfy that conclusion. Correct. But going beyond that, there's simply no evidence there. There was nothing, there's nothing in the record that Judge Nixon could have based such a finding on. Because the instructions would say that simply being present is not enough, so that's why you want that articulation of all of those steps that add up to the justification for the first degree murder cross-reference. Correct. And I would contend that under Milton, even though Ms. Anderson did not pull the trigger, obviously, the teaching of Milton, at least as I read it, is that she would have had to share the intent, the premeditation, and the actual malice to have killed Ms. Duran. She would have to have premeditatedly intended, if the two words are synonymous I guess, but the murder. Correct. That's your submission as to the meaning of this. Now if you're right about that, here we are 17 years later when this sentencing took place for reasons that completely escape me, I don't understand that. But what should we do, what should we say if we agree with you about this premeditation and intent situation that general perhaps foreseeability is not sufficient, what should we do? Well, we asked the court in our conclusion to rule, to find that neither of these guidelines applied as a matter of law. There's nothing for the district court to do on these two issues on remand, so we're asking the court to remand for a resentencing with those two enhancements off the table. Well, I guess my question is, let's leave aside the second question of her role and just on the question of deliberation and intent, if it goes back then what would be the guideline sentence possibility there? I should have this to make a memory, but we contend that she would be a level 35 with a guideline range of 210 to 262 months. And she's spent how long now? Since September 16, 1997 and about 20 months of that was in state custody. And how many months does that all add up to? Would she get out immediately or would she have to spend some more time or what? I think by this point, here we are six months from our resentencing in June, I believe she will have served almost exactly 210 months or very close to it. That's why I say my time is up. Thank you. Good morning. My name is Van Vincent and I represent the United States. As to Judge Moore's comment, the United States admits that the standard would be that Ms. Anderson had to agree to help Mr. Shakir, that it had to be foreseeable to her that the act would occur or could occur. That's different. The possibility of showing foreseeability, that taking all things into account, she should have foreseen this possibility is quite different from, maybe part of, but it's quite different from intending that the murder take place as a matter of a deliberate malice of forethought. Those two ideas are not synonymous. That is correct, Your Honor. They are distinctive. In this case, we actually have both. Speaking of the actual standard for the guideline, the United States would submit the Judge Moore's analysis. Do you submit that in order for her to be sentenced for malice of forethought and intent, the proof is sufficient? Yes, sir. She set Ms. Duran up for the murder. Why isn't it arguable that the defendant set Ms. Duran up for being harassed by Shakir, but not necessarily for being murdered? It's clear that Anderson, the defendant here, was in cahoots with Shakir to do something to Duran because of the earlier conversation between defendant Anderson and Duran, Anderson going to Shakir and telling him about this and then participating in this driving misadventure that results in Duran's being killed by Shakir. The question that I'm concerned about is whether Anderson has to know or have reason to know that Shakir is going to kill Duran as opposed to that Shakir is just going to harass or beat up or otherwise do the awful things that he is alleged to have done in the record in this case. The United States would submit as a legal standard its foreseeability that she'd have to be facilitating that it would be foreseeable that this could occur. That would be the legal standard the United States submits. However, on a factual basis in this particular case, the killing of Solomon Harris, which was in September of 1995, and then Duran's was December of 1995. Solomon Harris was killed where you pull your car up and you wash the car, not a drive-thru car wash, but you wash it yourself, in the parking lot. The car that was taken to the chop shop that Duran drove over to the chop shop was at the scene of the crime. It was used as part of that crime, of that murder. LaMisha Anderson originally took the car to the... I don't understand one thing you're saying. I thought you had just said that you thought that intent on the part of Anderson and a deliberate act of murder was to kill Duran with malice aforethought was the standard under the law there, 1111, and now you are saying no, that that is not sufficient, that is not required, only a finding of that it was foreseeable or possible or probable instead of intent to murder is the standard, and I don't see those as being the same standard. Either just simple foreseeability is the standard or deliberation intent to kill, which is a higher standard to meet, is the standard. Which is it you're saying? You're saying... Secure had the intent to kill definitively. LaMisha Anderson, the United States Wood Smith, also had that intent with Duran to bring her to the scene for the murder. But you said... But the standard... You said just a minute ago... It was foreseeable that the death of, or that Duran could have, could be, or would be killed, and that's what Judge Merritt is talking about. One of those, the foreseeability that it could occur, how does that meet the premeditated standard? Now, if you say that it was foreseeable that it would occur, that's different, but for first degree, you can't travel on a foreseeability that it could occur, can you? That it is foreseeable that that would be, that the murder would be the outcome of the event, yes ma'am. You said before that it could or would. One speaks to certainty and the other possibility. As the United States has submitted, Duran, pardon me, Ms. Anderson brought Duran or caused Duran to come to that location for that purpose, the murder. That is, as the district court found, factual knowledge. There's no evidence that she knew that the Shemir, Shemir is that... Shakir. Shakir intended to murder her. There's no evidence. He did in fact, but she wasn't in the car at the time and there, I don't see what the evidence is that she knew he intended to murder the woman and that she shared in the intent and therefore facilitated the murder in the sense of knowing that's what was going to happen. I mean, she had been involved in taking the car that was related to the Solomon Harris murder to the chop shop. Duran had also had some activity with that vehicle. It was Lamisha Anderson that drove Shakir over to the chop shop to look at the car. She didn't take the car there. Yes, that's true. She could have also thought or was foreseeable that the murderer here wanted to have a conversation with the woman about not snitching on him about his activities. I mean, there were a lot of things that could have occurred other than murder. Do you follow me? The... When the two got together, the murderer and the victim got together, it was not a matter of inevitable, necessarily in the mind of Anderson that the victim was going to be murdered. The idea and the possibility was that there would be a conversation about the snitching and an effort to deter the victim from snitching on the perpetrator here. The United States would submit that in any murder, probably it's not inevitable that it will occur until the actual murder takes place. A situation could always change. In this case, if I knew or the United States would submit if an individual knows that one of two outcomes may occur when we go to this location, she may get murdered or she may get beat up. It is still a factual knowledge. I understand that this person may be murdered at this location. Using your scenario, Judge Merritt. Under your theory, any time somebody knows that there could be a fight, they would be potentially liable for murder if the person is actually killed. Correct. Not for a fight, Judge Moore, I don't believe so. What the United States is attempting to submit or articulate, somewhat not artfully, that the issue is if I went to the fight and knew that this person's attitude was such that they would commit murder. They would commit murder. Correct. In this case, you already know that Shakir, because the murder of Solomon Harris was Shakir's order. Did Anderson know that Shakir had ordered the murder or participated in the murder of Harris at this point in time? Yes, ma'am. Did Anderson know that? What's the evidence of that? She had taken Shakir to the chop shop. Your Honor, correct. What I'm trying to remember for the transcript, it's been a while, Your Honor, and I did sit through the trial and assist in the trial. I was one of the assistants on the trial. I was not the lead. There are factual questions here, but there's also the underlying legal standard issue, which of course is something that we are particularly interested in. Your opponent said, when I was discussing with him and the Milton case and trying to say that Milton was arguably a different case, his response was, well, look at Campbell. What is your analysis of that? Campbell wasn't cited in the briefs, but it is cited in this Rule 28J letter from October. What does Campbell do here? Your Honor, at this moment, I'm drawing a total blank on the question. It seems to me that the legal issue, just knowing whether this is right as a statement of what the legal issue is, the legal issue is whether when we're looking at the fact that we have the relevant conduct provision in the sentencing guidelines in 1B1.3, whether it's enough as a matter of law for Defendant Anderson to see that it's foreseeable that the murder could take place and for Shakir to be the one who has the intent to murder. Correct, Your Honor. You say that is the law and your opponent says, no, the defendant here has to have intent to murder. Correct. I believe that is what you're referring to. Which is it, foreseeability or intent? An individual has to have the intent to commit the murder. It has to be foreseeable to an individual who participates in that event that the murder could occur. But Shakir's intent is enough in your view plus the foreseeability to this defendant? Correct, Your Honor. Another question that I have is, given the lack of explanation from the district judge here and the total reliance on the pre-sentence report and the difficulty that we've had in figuring out what are the facts here, should there not be a remand so that the district judge can actually explicitly apply whatever we say is the legal standard to the facts here? That can or could be an appropriate outcome. However, the district court specifically cited to the paragraphs of the pre-sentence report that the district court relied upon. The United States, within the brief, went to the transcript to the pages that supported those specific paragraphs within the pre-sentence report. So the United States submits that the district court did make a factual finding in adopting those. And I don't know that in the standard that it would be- The pre-sentence report, though, seems to think that simple foreseeability that may happen is sufficient. The district court also found not only was it foreseeable as to Ms. Anderson, but that she had factual knowledge to it. Factual knowledge can be drawn from the circumstances of the murder itself, the United States- He used the word foreseeable and says that he's relying on the pre-sentence report, which doesn't, as far as I can tell from reading it hurriedly, doesn't say anything about the necessity for her having the intent to murder. We'll take a look at it. I believe, Judge Merritt, that you are correct, that the pre-sentence report does not specifically say intent, that she had to have the intent to murder. I believe that is correct. If this goes back, and we think the standard is one of requiring intent, malice, deliberation, etc., on the part of Anderson, that the perpetrator's intent is not sufficient in itself, what would be the result in a sentencing procedure? The United States submits that Ms. Anderson should still be sentenced as she has been. The United States submits that in any murder you can take- The guideline sentence would be the same as 47, is that what you're saying? If it is found to be that she had actual knowledge, was a participant in the murder and intended for the murder to occur, yes, sir. If we say the standard is that foreseeability is not sufficient, you've got to find that she's got the intent to murder under the federal death penalty statute, the federal statute on murder, and the district court finds, well, she was foreseeable but that she didn't intend it, what would be then the result in this case? The guideline would lower. I do not recall off the top of my head how much difference, but it would lower. Is he still sitting, if it goes back to him, in case that's what we're dealing with? He is still handling cases, yes, sir. When the case came back, I don't know if he would still be there, obviously, but he is still handling cases. What took 17 years to get her sentenced? Eben Payne, who was the last defendant to be disposed of in the case of the actor, Eben Payne was the, I'm out of time, but if the court will indulge me for just a minute, Eben Payne was the individual who was the actual trigger puller in the Kennard-Murray-Regina-Suatopka case. Eben Payne was ultimately found by Judge Nixon to be incompetent to assist his counsel during the course of the trial, not incompetent at the time of the actual murder, incompetency at the time of, unable to know right from wrong, but incompetent to assist in his counsel, to assist his counsel in his defense. So Eben has now, pardon me, Mr. Payne, has now been committed to the Bureau of Prisons and remains in their custody for psychological treatment until if he's ever found to be able to function correctly in society, mentally. So that result did not occur until, I believe it was 2013 that that was finally, I'd have to go back and look, I don't want to misquote this, it may have been 2012, but I think it was 2013. Excuse me, counsel, I'm sorry, but you've given me a lot about Eben Payne. So was she getting corporation credit, the reason they had to wait for his sentencing in order to sentence her? She had wanted, if he was going to go to trial, if that trial was to occur, it is my understanding that she wanted to testify in hopes of getting some relief from the court or at least showing the court that she'd been cooperative. The United States had already withdrawn, stated that there would not be a 5K for her, or withdrawn the cooperation as stated in the brief. So a 5K I don't think would be what she was hoping for, but I think she was hoping for leniency from the court because she had voluntarily testified. So the U.S. didn't want her to be sentenced until after all this was over, is that the bottom line? I believe that the United States, my memory is that Ms. Anderson did not want to be sentenced until it was over so that she would have the opportunity. The United States probably agreed with that or didn't... Is there something in the record about that? There may be, Your Honor. I cannot off the top of my head tell you. Is it quite unusual to have a woman being sentenced 17 years after the plea and all of that? There were, prior to Ms. Anderson's sentencing, there were a couple also, it's my memory, after Mr. Payne's plea. She testified at Shakir's trial, correct? Yes, ma'am. And when was that? Shakir's trial began in September of 2007 and concluded in June of 2008. Okay. Well, thank you. Your red light is on, so unless there are any other questions, thanks. Thank you, Your Honors. And just for the court's information, I became involved in the case in the summer of 2006, right before the trial began. I had been out of the office in Iraq for assistance over there in a case. Thank you. Your Honors, I guess as a career defense counsel, my sensibilities may be too delicate, but there's a lot about this case that simply outrages me. And in response to one of the court's questions, Ms. Anderson, pro se, wrote a letter to Judge  Nixon. And it was ignored. And then finally in December 2013, Judge Nixon put down the order dismissing the case against Eben Payne. The government initially appeals and then ultimately dismisses the appeal. There's no excuse for why this woman languished in county jails all these years. But I guess maybe that's not what brings us here today. Your Honors, we cited in our brief Ms. Anderson's trial testimony in the Shakir case, and specifically on the Sharon Duran murder. The government on direct did not adduce any evidence that she intended or knew about the plan to kill Ms. Duran in advance. And then on cross-examination, she was specifically asked about whether she knew or knew about the Duran murder in advance. She denied it. She specifically denied it. And we cite those pages in our brief. And then the government, even though they revoked her plea agreement, they decided that she ought to get credit for acceptance of responsibility based on her testimony in the Shakir trial. And they said, and this is from the pre-sentence report, in this case the defendant testified at the trial of Jamal Shakir, even though the government advised her that a motion for substantial assistance would not be filed. In the government's view, such represents an extraordinary situation. And therefore, they agreed she ought to get the two levels for acceptance. Which paragraph is this just so we can look at it? Paragraph 36. And we would submit that the government endorsed the truthfulness of Ms. Anderson's testimony back when. And now we come up for sentencing last year, and last June, and the table's completely turned. The lawyer for the government at her sentencing, a Mrs. Cordray, or starts with a K, I think. Mr. Koshy. What? Sonny Koshy, Mr. Koshy. Mr. Koshy? Yes, sir. Okay. All right. Now, is that lawyer, where's that lawyer from? Well, he's from Nashville. And he's sort of, maybe Mr. Vinson could, he's sort of kind of retired. He pops in and out of, he's still popping in and out of cases. But anyway, my time's about up. But we would submit that Campbell, setting aside the murder clause reference specifically, Campbell rejects the notion of foreseeability by itself being enough to hold a defendant liable for the conduct of others. And that's all the district court found here. Thank you. Thank you. And I understand, Mr. Thomas, that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client in the interest of justice. Well, thank you, Annette, but it's been a privilege to represent her. Thank you, both. The case will be submitted